# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| JAMES LOUIS WELSH, | |
| Plaintiff, | No. C13-3053-MWB |
| vs. | |
| JOSEPH ANDREWS, THOMAS DELANOIT, IOWA DEPARTMENT OF CORRECTIONS, | **REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

## I.  INTRODUCTION

Plaintiff James Welsh (Welsh) commenced this lawsuit in the Southern District of Iowa on September 27, 2013. His pro se complaint (Doc. No. 1) names as defendants Joseph Andrews (Andrews), Thomas Delanoit (Delanoit) and the Iowa Department of Corrections (IDOC). Welsh claims that his constitutional rights were violated while he was incarcerated at the Fort Dodge Correctional Facility (FDCF). He seeks compensatory damages, attorney fees and court costs, as well as full payment of any fines.

This case was transferred to this court on October 4, 2013. Doc. No. 5. On October 10, 2013, Welsh filed a pro se motion (Doc. No. 6) to appoint counsel, which he then supplemented (Doc. No. 7) on October 15, 2013. That motion was denied. However, on April 11, 2014, Welsh filed a second pro se motion (Doc. No. 15) to appoint counsel, which was granted. Counsel was appointed on April 15, 2014.

The defendants filed a motion (Doc. No. 31) for summary judgment on May 12, 2015, raising several arguments. Welsh filed a "resistance" (Doc. No. 34) on June 15, 2015.[1] The Honorable Mark W. Bennett has referred the motion to me for the preparation of a report and recommended disposition. No party has requested oral argument and, in any event, I find that oral argument is not necessary. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted and ready for decision.

## II. OVERVIEW OF WELSH'S ALLEGATIONS

Welsh's complaint includes the following allegations:

During May and June 2013, Andrews engaged in religious-based harassment towards Welsh, including (1) asking him if a prayer rug was a magic carpet and if he could have a ride, and (2) deliberately providing Welsh with pork meals, which violated his religion's dietary rules. Andrews also made sexually-explicit comments regarding Welsh's religious jewelry. Welsh reported this harassing behavior to Delanoit and generally attempted to avoid Andrews.

On July 6, 2013, Delanoit met with Welsh to discuss the claimed harassment. After the discussion, Welsh was returning to his cell when Andrews confronted him and stated that he lived in a free country, could say whatever he liked and suggested he killed Muslims for a living. Welsh responded by asking to talk with Delanoit again and Andrews called Delanoit. After ending the call with Delanoit, Andrews pulled out his pepper spray and approached Welsh in an aggressive manner. Delanoit told Andrews to

---

[1] I use quotation marks because the purported "resistance" is barely an improvement over no resistance at all. It simply restates Welsh's allegations and points out the obvious truth that the record must be viewed in the light most favorable to the non-moving party. Doc. No. 34 at 1-3. Welsh did not file a brief that complies with Local Rules 7(e) and 56(b). Nor did he file a response to the defendants' statement of material facts or a statement of additional material facts. *See* N.D. Ia. L.R. 56(b). Because Welsh did not come close to even a minimum level of compliance with this court's rules, the motion for summary judgment could be granted without further notice or comment. *See* N.D. Ia. L.R. 7(e), 56(c). Nonetheless, I will consider the merits of the motion because the requested relief would terminate the case.

"stand down" over the radio. Andrews disregarded this order and discharged his pepper spray at Welsh three separate times, causing a great deal of pain.

Welsh was then taken to the segregation unit for decontamination. He was placed in a shower. However, the water was so hot he was unable to rinse properly. He requested that cold water be turned on but the officers ridiculed him for not being able to stand the hot water. After his shower, he was taken to another cell and told that if he wanted cold water to wash off in, he could use the water in the toilet. Welsh then splashed the water from the toilet on himself and laid in the cold water on the ground to help ease the pain from the pepper spray.

## III.  UNDISPUTED FACTS

The defendants filed a statement of undisputed material facts (Doc. No. 31-1). Welsh did not file a response to the defendants' statement of facts, nor did he submit a statement of additional material facts. Welsh is therefore deemed to have admitted the defendants' facts. N.D. Ia. L.R. 56(b). Those facts are set forth below. Additional facts will be discussed as necessary during the analysis of specific arguments.

On August 7, 2009, Welsh was committed to the custody and care of the IDOC to serve a ten-year sentence for theft in the first degree. Welsh was incarcerated at FDCF from April 9, 2013, until August 9, 2013, when he was transferred to the Iowa Medical and Classification Center in Coralville, Iowa. Welsh was transferred back to FDCF on August 21, 2013, and remained there until January 9, 2014. Welsh was discharged from his sentence on July 20, 2014.

At all times during Welsh's incarceration, FDCF and the IDOC had a grievance policy (the Policy) in place. The Policy outlined the process for inmates to alert the IDOC administration to inmate complaints and to allow staff an opportunity to improve institutional operations. An inmate could either file an informal grievance by discussing the issue with staff or submit a formal written grievance within thirty days of the alleged incident. The Policy also outlined the appeals process for denied grievances.

In the months leading up to July 6, 2013, Welsh was disruptive and behaved inappropriately with FDCF staff on numerous occasions. On July 2, 2013, Welsh wrote a grievance regarding the manner in which a nurse at FDCF provided him Tylenol, accusing the nurse of forging documents. On July 5, 2013, Andrews entered an event in Welsh's behavior log noting Welsh's inappropriate behavior, including having his feet on a table, responding aggressively when asked to remove his feet from the table and continued disruption when asked to return to his cell.

On July 6, 2013, Welsh went to Delanoit's office to complain about Andrews' inappropriate comments regarding Welsh's prayer rug. Delanoit explained to Welsh that he would talk with Andrews but stated that in the meantime, Welsh should return to his unit and lock down in his cell. When he returned to his unit, Welsh began threatening Andrews, aggressively approaching him, taking his shirt off and wrapping it around his head. Andrews directed Welsh to stop advancing. However, Welsh refused to obey the command and, as a result, Andrews sprayed him with pepper spray twice. Fellow officers responded to the incident and directed Welsh, who at first resisted, back to his cell. Welsh was then taken from his cell to lock up where he was allowed to shower and wash off the pepper spray. Welsh informed the officers that he intended to harm himself, which caused the officers to place him on "suicide watch" in a cell suited for observation. Welsh was asked if he wanted medical care but declined.

On July 8, 2013, Andrews wrote a disciplinary document regarding the July 6, 2013, incident. Welsh was served with the document on August 13, 2013, and on August 23, 2013, a hearing was held before an Administrative Law Judge (ALJ). The ALJ found that Welsh had violated prison rules 14 (threats/intimidation) and 26 (verbal abuse). Welsh was sanctioned with 15 days of disciplinary detention and 15 days loss of earned time. Welsh did not appeal the disciplinary conviction to the Warden, nor did he file a post-conviction relief action pursuant to Iowa Code Chapter 822. No court or tribunal has overturned the disciplinary conviction.

On July 9, 2013, Welsh filed a grievance regarding Andrews' alleged harassment. The grievance did not reference the July 6, 2013, incident. The Grievance Officer denied Welsh's grievance on July 11, 2013, and Welsh appealed that denial to the Warden. Deputy Warden Mike Kane denied the appeal on July 19, 2013. Welsh did not appeal that denial to the Central Office of the IDOC.

## IV. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties'

5

differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## V. DISCUSSION

Welsh alleges that his constitutional rights were violated when FDCF staff (1) made repeated harassing and threatening remarks to him about his religion, (2) used unreasonable and excessive force against him during the pepper spray incident and (3) did not provide him an adequate opportunity to wash himself after being sprayed. The defendants contend that the record does not support Welsh's excessive force claim. They

also argue that Welsh failed to exhaust all available administrative remedies as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a) (PLRA). Next, they assert that Welsh's claims for compensatory damages are barred by the PLRA due to the lack of physical injury. They further contend any claim Welsh makes for declaratory or injunctive relief is moot because Welsh is no longer incarcerated. They also argue that Welsh's claims are barred by *Heck v. Humphrey,* 512 U.S. 477 (1994). Finally, the defendants argue the individual defendants are entitled to qualified immunity and that the IDOC is not a proper party. I will address these arguments separately.

### A.   *Does the Record Support Welsh's Excessive Force Claim?*
#### 1.   *Applicable Standards*

"The unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment."[2] *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). When dealing with a prison disturbance, the pivotal question in determining whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Id*. at 6. What is needed to establish an "unnecessary and wanton infliction of pain" varies according to the nature of the alleged constitutional violation. *Id.* In making such a determination, a court must consider (1) the need for the force, (2) the relationship between the need for the force and the degree of the force that was employed and (3) the extent of the injury inflicted. *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir. 1994). Equally relevant are factors such

---

[2] The Eighth Amendment states:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

as (a) the extent of a threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them and (b) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321.

In the excessive force context, when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated, regardless of whether significant injury occurred or not. *Hudson*, 503 U.S at 9. To say otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. *Id*. However, not every malevolent touch by a prison guard gives rise to a federal cause of action. *Id*. (Citing *Johnson v. Glick* 481 F.2d 1028, 1033 (2d Cir.) *cert. denied*, 414 U.S. 1033 (1973) (not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights)). De minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind," are therefore not a violation of the Eighth Amendment. *Id* at 10.

Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Whitley*, 475 U.S. at 321-2. Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to maintain order and institutional security, even when an institutional restriction infringes a specific constitutional guarantee. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). The practice must then be evaluated in the light of the central objective of prison administration, safeguarding institutional security. *Id*. "That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Whitley*, 475 U.S. at 322. "It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Id*.

## 2. *Analysis*

The defendants argue there are no genuine issues of material facts that prevent entry of summary judgment in their favor on Welsh's excessive force claim. In particular, they contend Welsh failed to establish an Eighth Amendment violation because Andrews did not maliciously or sadistically cause Welsh harm. Rather, the defendants argue Andrews deployed his pepper spray in an effort to maintain and restore order in the prison. The defendants also contend that the force used against Welsh was de minimis and not of the sort that is repugnant to the conscience of mankind.

Turning to the first argument, the defendants argue that as a matter of law, they did not violate Welsh's Eighth Amendment rights by using excessive force against him. They contend that Andrews responded to Welsh's aggressive behavior and used appropriate force to maintain and restore order to the prison. The defendants met their initial summary judgment burden by providing evidence that Welsh instigated the July 6, 2013, event by acting aggressively, advancing towards Andrews, taking off his shirt and placing it around his head, threatening violence and disregarding direct orders to return to his cell. Doc. No. 31-3 at 13, 41-43, 44-49. The undisputed facts demonstrate that Andrews deployed pepper spray to stop Welsh's aggressive behavior, to maintain and restore order to the prison and to protect the safety of himself, fellow officers and inmates. Based on the record before me, it is apparent that there was a need for the use of force to dispel any potential violent acts from Welsh, as a reasonable correctional officer would interpret Welsh's actions as aggressive, potentially harmful and a threat to the safety of staff and inmates. Further, Andrews made an effort to temper the situation by giving Welsh a direct command to calm down and return to his cell, which Welsh disregarded. Even without regard to the deference courts must give to prison officials who are preserving prison integrity and security, I find that the non-lethal deployment of pepper spray was a legitimate and necessary use of force.

Once the defendants met their initial burden, Welsh had the burden to go beyond his pleadings, and by deposition, affidavits, or otherwise, point to specific facts showing

that there is a genuine dispute about the material facts. *Mosley*, 415 F.3d at 910. He failed to provide any evidence to meet that burden. He produced no evidence supporting his claims that Andrews was the aggressor or that the use of pepper spray was unnecessary, excessive or maliciously and sadistically deployed only for the purpose of causing harm and not for the legitimate purpose of quelling violence or maintaining order. Because Welsh has the burden of proof and has failed to show that any genuine issues of material fact exist with regard to his excessive force claim, I recommend that the motion for summary judgment be granted with regard to that claim.

Turning to the second argument, the defendants contend that the use of pepper spray was a de minimis application of force that is not sufficient to support an Eighth Amendment claim. The "core judicial inquiry" in an Eighth Amendment excessive force claim is not whether a certain quantum of injury is sustained, because any time force is used maliciously contemporary standards of decency are violated. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). However, the extent of an injury suffered by an inmate is a factor to consider, as that injury may suggest whether the use of force could plausibly have been thought necessary in the particular situation. *Id.* The extent of the injury may provide some indication of the amount of the force applied. Thus, the question is whether the force applied was de minimis, not the extent of the injury sustained. *Id.*

The Eighth Circuit Court of Appeals has held that not all applications of pepper spray are de minimis. *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (quoting *Lawrence v. Bowersox*, 297 F.3d 727, 731 (8th Cir. 2002)). Rather, the excessiveness of using pepper spray depends on the circumstances of the deployment. In *Treats*, the Eighth Circuit found that a basis for an Eighth Amendment claim existed when an officer allegedly used pepper spray without warning on an inmate who may have questioned his actions but otherwise posed no threat. 308 F.3d at 873-74 (citing *Foulk v. Charrier*, 262 F.3d 687, 691-92, 702 (8th Cir. 2001)). By contrast, in *Jones v. Shields*, 207 F.3d 491, 492-93 (8th Cir. 2000), a correctional officer deployed pepper spray on an inmate who refused to cooperate with direct orders, became loud, argumentative and profane and

advanced towards the officer. The court found that the use of pepper spray was reasonable under the circumstances. *Id*. at 495.

Here, the undisputed facts closely resemble those in *Jones*. Welsh was aggressive towards Andrews, removed his shirt, put it around his head, balled up his fist, refused to return to his cell and used profane language. Like the force used in *Jones,* the use of pepper spray under these circumstances was reasonable and necessary. Further, the facts show that Welsh suffered no long term damage, was allowed to decontaminate and never requested any medical treatment, demonstrating that the amount of force used was minimal. I find that under the circumstances, pepper spray was not used maliciously, did not cause the type of injury that is "repugnant to the conscience of mankind" and was reasonable under the circumstances. Therefore, I recommend that the defendants' motion for summary judgment be granted with respect to Welsh's excessive force claim.

### B. *Did Welsh Exhaust All Available Administrative Remedies?*
#### 1. *Applicable Standards*

The PLRA governs actions regarding prison conditions brought pursuant to 42 U.S.C. § 1983 or any other federal law. 42 U.S.C. § 1997e(a). Among other things, the PLRA states that no such action may be brought "until such administrative remedies as are available are exhausted." *Id.* This exhaustion requirement applies to any inmate lawsuit based on prison conditions, regardless of whether the lawsuit revolves around general circumstances or particular incidents and whether the lawsuit alleges excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It requires that all prisoner-plaintiffs must first exhaust all available administrative remedies prior to bringing a lawsuit. *Id.* Failure to exhaust all available administrative remedies is grounds for mandatory dismissal. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000). The available remedies must be properly exhausted in compliance with all prison grievance procedures, deadlines or preconditions. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The prison's requirements for grievance procedures, not the PLRA, define the specific

remedies that must be exhausted and the manner for doing so. *Id.; see also King v. Iowa Dep't of Corr.*, 598 F.3d 1051, 1053-54 (8th Cir. 2010). Failure to exhaust remedies is an affirmative defense. *Bock,* 549 U.S. at 216.

### 2. *Analysis*

Upon careful review of the record, I find as a matter of law that Welsh failed to properly exhaust all available remedies for the allegations described in his complaint. The Policy was in place during all times that Welsh was incarcerated at the FDCF. The Policy provided an internal grievance mechanism for inmates and outlined the process for filing grievances for the resolution of complaints arising from institutional matters. Doc. No. 31-3 at 50.

Under the Policy, inmates were first required to attempt to resolve complaints informally, with assistance from their counselor, unit manager or a supervisor. Doc. No. 31-3 at 53. If informal resolution did not solve the issue, then the inmate was required to file a formal grievance within thirty days of any alleged incident. *Id.* at 51. If the formal grievance was denied, the inmate could appeal that decision by filing a Grievant Appeal form with the Warden or Superintendent within fifteen days of the denial. *Id.* at 53, 55. If the Warden denied the appeal, an inmate could appeal that denial to the respective Regional Deputy Director within fifteen days of the denial date. *Id.* at 55. The grievance to the Regional Deputy Director, and the Director's response, was the final step in the grievance process outlined in the Policy. *Id.* To properly exhaust the available remedies under the PLRA, Welsh was required to follow these guidelines, deadlines and procedures. *Jones*, 549 U.S. at 218.

Welsh submitted three formal grievances, only one of which is relevant to this case.[3] On July 9, 2013, Welsh filed a formal grievance alleging that Andrews harassed

---

[3] As for the other two grievances, the first complained about how a nurse administered Tylenol and the second requested additional medical treatment for warts. Doc. No. 31-3 at 25. Welsh did not appeal the denial of either grievance. *Id.*

him and discriminated against him because of his religion. Doc. No. 31-3 at 31-32. Welsh alleged that Andrews repeatedly brought him pork meal trays, knowing that Welsh did not eat pork, made comments about killing Muslims, knowing Welsh was a Sunni Muslim, and asked if Welsh's prayer rug was a magic carpet that he could ride. *Id*. This grievance was denied by the Grievance Officer. *Id*. at 33. Welsh appealed the denial to the Warden but that appeal was denied. *Id*. at 34-35, 36. Welsh did not appeal the Warden's denial to the Regional Deputy Director, which is a required step in the Policy appeal process. Because Welsh did not follow the Policy appeal guidelines, all claims based on the alleged harassment must be dismissed, as Welsh failed to exhaust all available administrative remedies prior to filing this lawsuit.

Welsh did not submit a grievance concerning the pepper spray incident of July 6, 2013. Nor did he include any details of that incident in his July 9, 2013, grievance. The record demonstrates that Welsh failed to exhaust all available administrative remedies concerning his excessive force claim, as required by the PLRA. This provides an additional, alternative basis to dismiss that claim. All of the claims Welsh presents in this case are barred by his failure to exhaust all available administrative remedies.

### C. *Are Compensatory Damages Barred By the PLRA?*

The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. §1997e(e). The PLRA does not define "physical injury." Nor has the Eighth Circuit explicitly determined what constitutes "a prior showing of physical injury." However, the Eighth Circuit repeatedly has upheld Section 1997e(e) dismissals in the absence of any allegation of physical injury. *See Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (plaintiff failed to state Eighth Amendment claim because he did not

allege how inadequate security caused him injury); *Johnson v. Norris*, 3 Fed. Appx. 579 (8th Cir. Feb. 22, 2001) (unpub. per curiam) (same); *Kellensworth v. Norris*, 221 F.3d 1342 (8th Cir. June 14, 2000) (unpub. per curiam) (no allegation or suggestion of physical injury arising from temporary housing with an inmate feared by the plaintiff); *Smith v. Spath*, 187 F.3d 643 (8th Cir. May 17, 1999) (unpub. per curiam) (no injury other than emotional distress from delay in correcting clerical error in sentencing order).

In *Smith v. Moody*, 175 F.3d 1025 (8th Cir. Mar. 26, 1999) (unpub. per curiam), the Eighth Circuit affirmed a Section 1997e(e) dismissal for failure to allege a physical injury. The court cited favorably to a Fifth Circuit case in which an inmate's claims were dismissed because the alleged physical injury was merely de minimis. *Id.* (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997)). In *Siglar*, the Fifth Circuit applied Eighth Amendment standards to determine whether a prisoner-plaintiff sustained physical injury as required by Section 1997e(e). 112 F.3d at 193. The court held that a prisoner who did not seek medical treatment for a sore, bruised ear, which lasted three days after an attack by a correctional officer, did not have the requisite "physical injury" to support a claim for mental or emotional injuries. *Id.* at 193-94.

Based on the Eighth Circuit's reliance on *Siglar,* I find that Eighth Amendment standards should be used to determine whether an inmate sustained the physical injury required by Section 1997e(e). Even viewing the record in a light most favorable to Welsh, I find that he has not demonstrated a sufficient physical injury to satisfy that requirement. Welsh was sprayed with pepper spray during an altercation with a correctional officer but was then allowed decontaminate himself with hot water in a shower. He refused medical treatment and had no visible burns, scalds, bruising or signs of physical injury. Welsh has provided no evidence suggesting that he suffered a long lasting or actual physical injury from Andrews' conduct. While I have no doubt that being doused with pepper spray is painful and unpleasant, the record reflects that Welsh suffered no more than a de minimis physical injury.

Nor has Welsh presented evidence of any physical injury as a result of the alleged harassment by Andrews. Welsh has not shown that being given pork meal trays or being subjected to obnoxious comments about his religion, prayer rugs or other religious jewelry caused any physical injury. All of Welsh's claims are barred in light of Section 1997e(e)'s physical injury requirement.

### D. Is Declaratory Or Injunctive Relief Moot?

Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). When a case no longer presents an actual, ongoing case or controversy, the case is moot and the federal courts no longer have jurisdiction to hear it. *Hickman v. Missouri*, 144 F.3d 1141, 1142 (8th Cir. 1998) (quoting *Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1172(8th Cir. 1994)). This requirement applies with equal force to declaratory judgment actions as it does to traditional actions seeking coercive relief. *Hickman*, 144 F.3d at 1142 (quoting *Marine Equip. Management Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993)). When an inmate is no longer subject to the conditions of which he complains, his claims are moot. *Hickman*, 144 F.3d at 1142 (citing *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985)).

The defendants argue that any request by Welsh for declaratory judgment or injunctive relief is moot and his complaint should be dismissed. Upon my review of Welsh's complaint, there is no indication that he is requesting declaratory judgment or an injunction. Rather, in Section VI of his complaint, entitled Relief, he is very specific with his request for "$50,000 for the pain of pepper spray being used on [him] unjustly and the pain and humiliation of having to use toilet water to decontaminate [him]self." Nonetheless, in the event that Welsh does seek declaratory judgment or injunctive relief, I find the case is moot as to those claims. Welsh was discharged from his sentence and released from the custody and care of IDOC on July 20, 2014. Because he is no longer

an inmate at FDCF, there is no actual, ongoing case or controversy to form the basis for a declaratory judgment or injunctive relief claim. As such, to the extent Welsh may seek declaratory or injunctive relief, I recommend that his requests be denied as moot.

### E. Can Welsh Pursue Claims Against These Defendants?

Defendants contend (1) that the FDCF staff and officials are entitled to qualified immunity and (2) that the Eleventh Amendment bars Welsh's claims against IDOC. I will address these issues separately.

#### 1. Qualified Immunity

Qualified immunity is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether an official is entitled to qualified immunity, the Court must determine whether there was a deprivation of a constitutional right, and whether the right was clearly established such that a reasonable official would understand his conduct was unlawful in the situation he confronted. *Vaughn v. Green County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006).

Here, I have already concluded that the defendants are entitled to summary judgment on Welsh's Eighth Amendment excessive force claims. In other words, Welsh was not deprived of his constitutional rights, nor was there a clearly established right such that an official would understand his conduct was unlawful in the situation. Under these circumstances, I find the FDCF staff and officials are entitled to qualified immunity.

## 2. *Eleventh Amendment*

The IDOC invokes the Eleventh Amendment[4] to the United States Constitution to contend that it is not a proper party to this Section 1983 action. The Eleventh Amendment provides states and their agencies with immunity from suits brought by private citizens in federal court. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). Congress may abrogate this immunity if it both (a) enacts a statute that unequivocally expresses an intent to do so and (2) acts pursuant to a valid grant of constitutional authority. *Kimel v. Florida Bd. Of Regents*, 528 U.S. 62, 73 (2000). The Supreme Court has held that "Section 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States." *Quern v. Jordan*, 440 U.S. 332, 345 (1979); *see also, Kentucky v. Graham*, 473 U.S. 159, 169 n. 17 (1985); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 76 (1989). As such, the IDOC – as an agency of the State of Iowa – is entitled to Eleventh Amendment immunity from Welsh's Section 1983 claims.[5]

---

[4] Which states:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

U.S. Const. amend. XI.

[5] Because I have concluded, for many alternative reasons, that the defendants are entitled to summary judgment on all of Welsh's claims, I find it unnecessary to address their additional argument that Welsh's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

## VI. CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the defendants' motion (Doc. No. 31) for summary judgment be **granted** with respect to all claims.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 30th day of June, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE